ROSBORO LUMBER COMPANY *v.* COMMISSION

Vernon Gleaves, Butler, Husk & Gleaves, respresented plaintiff.

Carl N. Byers, Assistant Attorney General, represented defendant.

Decision in part for plaintiff and in part for defendant rendered March 4, 1969.

EDWARD H. HOWELL, Judge.

This case involves the true cash value of plaintiff's sawmill and plywood plant in Springfield, Oregon, as of January 1, 1967. The only issue is the true cash value of the buildings, machinery and equipment as the value of the land is not in dispute.

The Lane County Department of Assessment and Taxation found the true cash value of the property to be $4,889,460. This valuation was sustained by the Lane County Board of Equalization and the State Tax Commission.

The present complex started with the construction of the sawmill in 1939. Later the plaintiff added a chipper, log debarker, lumber sheds, dry kilns, plywood and veneer plant, a fabricating and a laminating

plant, in addition to other buildings and equipment. Additions and replacements to plaintiff's plant from January 1, 1961, to January 1, 1967, amounted to approximately $2,000,000.

The plaintiff's property was valued by the county at $3,000,000 in 1961; $3,188,000 in 1962; $3,290,000 in 1963; $3,692,950 in 1964; $3,769,290 in 1965 and $4,238,000 in 1966.

In arriving at the true cash value of $4,889,460 for the subject property on January 1, 1967, the appraiser for the Lane County Department of Assessment and Taxation used a combination replacement-reproduction cost less depreciation approach to true cash value. The appraiser used the following schedule which shows the properties involved, their values as of 1961, the additions and deletions, and the 1967 valuations.

|  | Appraisal 1961 | Additions and Deletions (1961–1967) | Total 1967 | Appraisal 1967 |
|---|---|---|---|---|
| Sawmill | $ 640,287 | $ 401,253 | $1,041,540 | $1,181,830 |
| Powerhouse | 222,275 | 5,795 | 228,070 | 280,540 |
| Planer Kilns | 406,878 | 139,273 | 546,151 | 758,010 |
| Crane Sheds | 395,230 | 49,546 | 444,776 | 306,560 |
| Fab & Lam | 27,130 | 620,457 | 647,587 | 490,910 |
| Shop, etc. | 14,960 | 23,291 | 38,251 | 34,200 |
| Green Veneer | 357,380 | 91,046 | 448,426 | 245,860 |
| Ply Plant | 808,100 | 855,394 | 1,663,494 | 1,384,260 |
| Yard Imp. | 153,910 | ........... | 153,910 | 179,710 |
| Office & misc. | 10,490 | 35,620 | 46,110 | 27,580 |
| Total | $3,036,640 | $2,221,675 | $5,258,315 | $4,889,460 |

At the trial the plaintiff discovered, and the county appraiser admitted, that a one million dollar arithmetical error had occurred in arriving at the valuation of $4,889,460. The parties stipulated that the

error would result in a reduction of $500,000 in the true cash value of the property.

The plaintiff's appraiser, who used the replacement cost less depreciation approach to true cash value found that the property involved had a true cash value of $1,900,000 as of January 1, 1967.

Although the plaintiff spent $2,000,000 in additions to the plant from 1961 to 1967, both the county appraiser and the plaintiff's appraiser agreed that a certain amount of functional obsolescence existed in the facility. The powerhouse and steam generating facilities were inadequate and expensive to maintain; some of the buildings were improperly designed and located in relation to other buildings resulting in a poor flow of products from one area to another; the conveyor system was too lengthy.

Plaintiff's general manager testified that it would cost $5,500,000 to replace the entire complex with a modern efficient plant which would eliminate the inadequacies mentioned above. He also stated that the replacement plant would result in a saving of approximately $800,000 per year.

The entire complex has been insured for $5,500,000 but this is on a replacement basis.

In arriving at a value of $4,389,460 ($4,889,460 less the $500,000 reduction agreed upon as the result of the arithmetical error) the county appraiser has not allowed a sufficient reduction in value because of functional obsolescence.

On the other hand it is difficult to believe that the additions to the plant from 1961 to 1967 in the amount of $2,000,000, when added to the original facilities which were valued by the county at $3,000,000 in 1961, would result in a plant that is worth $1,900,000 in 1967. However, the county appraiser recognized that the ex-

pansion and improvements added during that period have not increased the efficiency of the mill in all respects. His appraisal report states:

> "* * * Expansion of existing functions as well as addition of new functions has caused some problems.

> "The expansion has resulted in poor arrangement for flow of product as well as some inequality of capacity. Both sawmill and plywood plants have periods of unused capacity. Another factor influencing the degree of functional depreciation is the inability of some of the older facilities to keep pace with later developments. An example of this situation is the low pressure steam system which requires more dryer capacity than would be expected with higher pressure."

Considering the total amount invested, the functional obsolescence existing in the entire plant and the other features mentioned herein it is this court's conclusion that the true cash value of plaintiff's entire complex should be set at $3,300,000 as of January 1, 1967.